IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CARL SAMA, et al.,** | * | |
| | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Case No: 1:22-CV-02344-JMC |
| **TURNING POINT, INC., et al.,** | | |
| | * | |
| *Defendants.* | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Carl Sama and Paddy Menkem,[1] filed the present action against Defendants, Turning Point, Inc. ("Turning Point") and Reverend Milton Emanual Williams, Jr. ("Rev. Williams"), alleging violations of the (1) Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*; (2) Maryland Wage and Hour Law, Md. Code Ann. Labor and Employment Article §§ 3-401, *et seq.* ("MWHL"); and (3) Maryland Wage Payment and Collection Law, Md. Code Ann. Labor and Employment Article §§ 3-501, *et seq.* ("MWPCL"). (ECF Nos. 1, 60). Presently pending before the Court are two dispositive motions: Plaintiff Sama's Motion for Summary Judgment (ECF No. 34) ("Sama's Motion") and Plaintiff Menkem's Motion for Summary Judgment (ECF No. 50) ("Menkem's Motion"). Defendants filed oppositions to both motions (ECF Nos. 35, 51), which both Plaintiffs have also moved to strike accompanied by replies thereto in the alternative (ECF Nos. 39, 49, 53, 56).[2] The Court has additionally considered Defendants'

---

[1] Plaintiffs Sama and Menkem initially filed these nearly identical lawsuits separately. However, pursuant to Defendants' request for consolidation and the Court's November 15th, 2023, conference call with all parties in both cases, the Court consolidated both cases, along with their pending motions, on December 7, 2023. *See* (ECF Nos. 45, 46, 47, 57).

[2] Without opposition, the Court previously granted both Plaintiffs' motions to amend/correct their replies to Defendants' oppositions to Plaintiffs' motions for summary judgment. *See* (ECF No. 57). Accordingly, the Court considers the amended replies in support of the motions for summary judgment.

surreplies regarding both motions for summary judgment. *See* (ECF Nos. 57, 58, 59). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, both motions to strike will be denied, Sama's Motion will be granted in part and denied in part, and Menkem's Motion will be granted in part and denied in part.

I. **BACKGROUND**

Both Plaintiffs are adult residents of the State of Maryland. (ECF Nos. 1, 60 at 2).[3] Defendant Turning Point is a substance abuse treatment program located in Baltimore City, Maryland, and Rev. Williams is a pastor and founding member and president of Turning Point who "remains heavily involved in the day-to-day operations of Turning Point." *Id.*[4] Plaintiff Sama worked for Turning Point as a Licensed Practical Nurse from approximately 2014 until August 31, 2022, and Plaintiff Menkem has also worked for Turning Point as a Licensed Practical Nurse since approximately November 10, 2011. (ECF Nos. 1, 60 at 3). Both were given the title "Medicating Nurse." *Id.* Plaintiffs were paid at an hourly rate at all times relevant to their claims, ranging from $28.09 to $30.70 between 2018 and 2021. *Id.*

Plaintiffs reported their hours by clocking in and out during every shift through a time keeping machine maintained at the front entrance of Turning Point, which involved Plaintiffs using their thumbprints to activate the time keeping machine. (ECF Nos. 1, 60 at 4). Both allege that they worked between 60 and 72 hours in a typical work week between 2014 and July 2021, but that they were not compensated overtime for their hours worked in excess of 40 each week. *Id.*

---

[3] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

[4] Plaintiffs' filings in this action are separate but nearly identical. Thus, when the Court uses short form citation to refer to more than one ECF document and/or page number, the Court is referring to identical information described in each Plaintiffs' separate filings unless otherwise specified.

Accordingly, Plaintiffs filed the present lawsuit alleging that Defendants violated the FLSA, MWHL, and MWPCL.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

### III. DISCUSSION

#### A. Plaintiffs' Motions to Strike

Before turning to the merits of Plaintiffs' motions for summary judgment, Plaintiffs urge this Court to strike Defendants' oppositions thereto for failing to comply with Local Rule 105.2(a) (D. Md. 2023). Local Rule 105.2(a) provides, in pertinent part, that "All motions must be filed within deadlines set by the Court. Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda." Sama's Motion was served on August 25, 2023, and Menkem's Motion was served on August 28, 2023. (ECF No. 49-2 at 1; ECF No. 56-2 at 1). Plaintiffs contend that Defendants' oppositions were thus due by September 8, 2023, and September 11, 2023, respectively. *Id.* However, Defendants' opposition to Sama's Motion was served on September 11, 2023, and Defendants' opposition to Menkem's Motion was served on September 12, 2023. *Id.*

> Federal Rule of Civil Procedure 6 states:
>
> (a) COMPUTING TIME. The following rules apply in computing any time period specified in these rules, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> (1) *Period Stated in Days or a Longer Unit.* When the period is stated in days or a longer unit of time:
>
> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.

Fed. R. Civ. P. 6(a). Beginning with Defendants' opposition to Sama's Motion, Sama's Motion was served on August 25, 2023. Per Rule 6(a)(1)(A), the Local Rule's 14-day period began on

4

August 26, 2023, making Defendants' opposition due by the end of the fourteenth day therefrom, or September 8, 2023 (a Friday). Defendants filed their opposition to Sama's Motion on September 11, 2023, though, making it untimely by three days. Regarding Menkem's Motion, the Local Rule's 14-day period began on August 29, 2023, under Rule 6(a)(1)(A). Including August 29, 2023, the fourteenth day therefrom was September 11, 2023 (a Monday). Defendants' opposition to Menkem's Motion was therefore also untimely by one day because it was filed on September 12, 2023. However, it is within the Court's discretion to consider an untimely-filed pleading for failing to abide by the Local Rules' briefing schedule. *See Ball-Rice v. Bd. of Educ. of Prince George's Cnty.*, No. CIV.A. PJM-11-1398, 2013 WL 2299725, at *5 (D. Md. May 24, 2013) ("Since Local Rule 105.2 does not provide the consequence for a failure to meet the prescribed deadline, it is within the discretion of the court to consider a late submission untimely and strike it from the record."); *Curtis v. Evans*, No. CIV.A. DKC 2003-2774, 2004 WL 1175227, at *1 (D. Md. May 27, 2004) (noting same). Given that Defendants' oppositions were untimely by merely 3 days (Sama's Motion) and 1 day (Menkem's Motion), the Court will exercise that discretion by denying the Motions to Strike and considering Defendants' oppositions. *See Trustees of Sheet Metal Workers' Loc. Union No. 5 & Iron Workers Emps. Ass'n, Emp. Pension Tr. v. R. Stoddard, LLC*, No. GJH-17-3286, 2019 WL 1128518, at *1 (D. Md. Mar. 8, 2019) ("The Fourth Circuit 'has a strong policy that cases be decided on their merits.'") (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)).

### B. Plaintiffs' Motions for Summary Judgment

Turning to the merits of Plaintiffs' motions for summary judgment, both Plaintiffs contend that the undisputed facts in this case demonstrate their entitlement to judgment as a matter of law. (ECF No. 24 at 1; ECF No. 50 at 1). At their core, both motions argue that Defendants maintained

an overtime policy of paying certain employees "time and one-half their regularly hourly rates for hours worked in excess of 40 hours in a workweek," that Plaintiffs worked in excess of 40 hours in a workweek on numerous occasions throughout their employment, and that Defendants failed to pay Plaintiffs time and one-half for those efforts by instead paying Plaintiffs "'straight time' wages for each hour worked even those beyond (40) hours." (ECF No. 34-1 at 3–4; ECF No. 50-1 at 3–4).

       1. <u>There is No Genuine Dispute of Material Fact that Both Defendants Were "Employers" for Purposes of the FLSA, MWHL, and MWPCL, and that Both Plaintiffs Were Employees Thereunder at All Times Relevant to Plaintiffs' Claims.</u>

Plaintiffs first argue that both were employees as defined by the relevant statutes and that both Defendants are properly considered employers under the relevant statutes. "A violation of the FLSA and the MWHL occurs when an employer fails to pay an employee overtime wages—one-and-one-half times the employees' base wage—for every hour over 40 hours worked in a week." *Jiminez v. Express Check Cash, LLC*, No. PWG-17-2696, 2018 WL 3970476, at *2 (D. Md. Aug. 17, 2018) (quotation omitted); *see also Quirk v. Balt. Cnty., Md.*, 895 F. Supp. 773, 777 (D. Md. 1995) ("Section 7(a)(1) of the [FLSA] . . . requires that employees be paid time and a half for work over 40 hours per week."). Individuals "employed in a bona fide executive, administrative, or professional capacity" are exempt from this requirement. 29 U.S.C. § 213(a)(1).

Under the FLSA, an "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The FLSA's definition of employer is interpreted broadly to give effect to the purpose of the FLSA; namely, providing employees a statutory remedy for employers' labor violations." *Ergashov v. Glob. Dynamic Transp., LLC*, No. CV JFM-15-1007, 2015 WL 13229505, at *5 (D. Md. Nov. 13, 2015), *aff'd*, 680 F. App'x 161 (4th Cir. 2017). The MWHL, "Maryland's equivalent of the FLSA,"

nearly identically defines "employer" as "a person who acts directly or indirectly in the interest of another employer with an employee." *Ergashov*, 2015 WL 13229505 at *5; Md. Code Ann., Lab. & Empl. § 3-401(b). Moreover, the MWPCL defines "employer" as "any person who employs an individual in the State or a successor of the person." Md. Code Ann., Lab. & Empl. § 3-501(b). Recognizing some overlap between these definitions, Maryland courts have consistently utilized FLSA case law and analysis *in pari materia* with the MWHL and MWPCL when determining who constitutes an "employer" thereunder while still noting that the MWPCL's definition is "more restrictive." *See Ergashov*, 2015 WL 13229505 at *5; *Watkins v. Brown*, 173 F. Supp. 2d 409, 416 (D. Md. 2001).

Regarding individuals' liability under the FLSA, "It is well settled that an individual may qualify as an employer and face liability under the FLSA" and thus correspondingly under the MWHL and MWPCL. *Roman v. Guapos III, Inc.*, 970 F. Supp. 2d 407, 416 (D. Md. 2013). In determining whether an individual qualifies as an employer for purposes of the FLSA and related Maryland statutes, "[t]he overarching concern is whether [he] possessed the power to control the workers in question." *Prusin v. Canton's Pearls, LLC*, No. CV JKB-16-0605, 2017 WL 5126156, at *11 (D. Md. Nov. 6, 2017). This Court resorts to the "economic realities" test in determining that level of control, considering factors such as "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (citing *Speert v. Proficio Mortg. Ventures, LLC*, No. JKB-10-718, 2011 WL 2417133, at *3 (D. Md. June 11, 2011)). "None of the four factors is dispositive; rather, a court should consider the totality of circumstances," including additional considerations such as "the person's job description, his or her financial interest in the enterprise, and whether or

not the individual exercises control over the employment relationship." *Id.* (internal quotations omitted).

Defendants conceded in their Answers to Plaintiffs' Complaints that (1) Defendant Turning Point is an employer for purposes of the FLSA, MWHL, and MWPCL; and (2) both Plaintiffs worked for Defendants during the relevant time period. *See* (ECF No. 1 at ¶¶ 2, 4, 6); (ECF Nos. 13, 14 at 1); *Menkem v. Turning Point, Inc. et al*, No. 22-cv-2345-MJM, ECF No. 1 at ¶¶ 2, 4, 6; ECF Nos. 9, 10 at 1). Nor do Defendants contest these assertions in their Oppositions to the pending Motions, or that both Plaintiffs were non-exempt employees.[5] *See* Fed. R. Civ. P. 56(e). In fact, Defendants' oppositions assert that Defendant Turning Point paid both Plaintiffs for the wages they were entitled to under federal and state law, *i.e.* Defendant Turning Point employed Plaintiffs. *See* (ECF No. 35 at 2–3; ECF No. 51 at 2–3). Accordingly, there is no genuine dispute of material fact that Defendant Turning Point qualifies as an employer for purposes of the FLSA, MWHL, and MWPCL, and that both Plaintiffs were non-exempt employees under the same. *See also Counts v. S.C. Elec. & Gas Co.*, 317 F.3d 453, 455 (4th Cir. 2003) ("[I]n order to be exempt from overtime pay requirements, an employee must be paid on a salaried rather than hourly basis . . . ."); (ECF No. 1 at ¶ 12) (alleging that Plaintiff Sama was paid on an hourly basis); (ECF No. 13, 14 at 1) (admitting that Plaintiff Sama was paid on an hourly basis); *Menkem v. Turning Point, Inc. et al*, No. 22-cv-2345-MJM, ECF No. 1 at ¶ 12 (alleging that Plaintiff Menkem was paid on an hourly basis); ECF Nos. 9, 10 at 1 (admitting that Plaintiff Menkem was paid on an hourly basis). Summary judgment is thus granted in favor of Plaintiff on those issues.

---

[5] Defendants admitted in their Answers to each respective Complaint that each Plaintiff "was not exempt from the requirements of the FLSA and MWHL that non-exempt employees be paid overtime pay for hours worked in excess of forty (40) hours in a given work week." (ECF No. 1 at ¶ 6); (ECF Nos. 13, 14 at 1)*; Menkem v. Turning Point, Inc. et al*, No. 22-cv-2345-MJM, ECF No. 1 at ¶¶ 6; ECF Nos. 9, 10 at 1.

Defendants likewise indicate that Rev. Williams also qualifies as an employer under the FLSA, MWHL, and MWPCL for purposes of this action. Although Defendants initially denied this assertion in their Answers, Defendants failed to oppose this assertion in their oppositions to Plaintiffs' Motions and even indicate throughout their oppositions that Rev. Williams exercised great "power to control the workers in question." *Prusin*, 2017 WL 5126156 at *11. For instance, Defendants' own oppositions make clear that Rev. Williams devised, proposed, and implemented the compensation plans which nurses at Turning Point were paid pursuant to. (ECF No. 35 at 2; ECF No. 51 at 2). Rev. Williams also explained in his deposition as the corporate designee of Turning Point that he was the sole founder and remains the sole owner of Turning Point. (ECF No. 50-2 at 7). Rev. Williams then confirmed in his individual deposition that he is the president and CEO of Turning Point, "the sole person responsible for everything that happens" at Turning Point, that he "provides general oversight" of Turning Point and "deal[s] with every aspect of what happens to make it clear mentally, psychologically, financially," and notably, that Rev. Williams oversees hiring, setting policies regarding compensation, approves overall payroll decisions, and directs individuals to effectuate his and Turning Point's policies. (ECF No. 50-3 at 8–11).[6] Noting Defendants' lack of opposition otherwise, there is no genuine dispute of material fact that, considering the totality of the circumstances under the economic realities test, Rev. Williams exercises sufficient control and involvement in Turning Point such that he constitutes an employer within the meaning of the FLSA, MWHL, and MWPCL.

---

[6] In fact, with reference to Plaintiff Menkem specifically, Rev. Williams even testified in his individual deposition that "I worked with Paddy for many, many years. Paddy was one of my better employees." (ECF No. 50-3 at 12).

2. <u>There Exists a Genuine Dispute of Material Fact Regarding Whether Defendants Violated the FLSA, MWHL, and MWPCL.</u>

Plaintiffs next argue that, as a matter of law, there is no genuine dispute of material fact that Defendants failed to pay overtime wages in violation of the FLSA and MWHL. (ECF No. 34-1 at 8–10; ECF No. 50-1 at 7–8). As noted previously, "The FLSA and its 'State parallel,' the MWHL, require that an employer 'pay an overtime wage of at least 1.5 times the usual hourly wage for each hour over 40 that [a non-exempt] employee works during one workweek.'" *Newell v. Runnels*, 407 Md. 578, 649 (2009) (quoting *Friolo v. Frankel*, 373 Md. 501, 513 (2003)); *see also* 29 U.S.C. § 207(a). "To prevail on a FLSA overtime claim, Plaintiffs must show that: (1) they were employed by Defendants; (2) they worked overtime hours for which they were not properly compensated; and (3), Defendants had knowledge of the hours worked." *De Paredes v. Zen Nails Studio, LLC*, No. CV TDC-20-2432, 2023 WL 2207405, at *3 (D. Md. Feb. 24, 2023) (citing *Davis v. Food Lion*, 792 F.2d 1274, 1276 (4th Cir. 1986)). Moreover, "The requirements under the MWHL mirror those of the federal law." *Id.* at *4. Thus, Plaintiffs' "overtime claims under the MWHL stand or fall on the success of their claims under [the] FLSA." *Id.* (citing *McFeeley v. Jackson Street Ent., LLC*, 47 F. Supp. 3d 260, 267 n.6 (D. Md. 2014)).

Defendants do not argue that Plaintiffs were not employed by Defendants, that Plaintiffs did not work overtime hours, or that Defendants had no knowledge of Plaintiffs' overtime hours worked. *See* (ECF No. 25 at 2–3; ECF No. 51 at 2–3). Rather, Defendants contends that summary judgment is inappropriate because Defendants entered into agreements with Plaintiffs which "increased the hourly rate for all hours worked, rather than just paying more for only the overtime hours." (ECF No. 35 at 2; ECF No. 51 at 2). In other words, Defendants purportedly raised the hourly rate for Plaintiffs in lieu of maintaining their typical hourly rates supplemented through

additional 1.5 times overtime pay for hours worked in excess of 40 for any given workweek.[7] Accordingly, Defendants assert that Plaintiffs are not entitled to judgment as a matter of law because, under that scheme, both Plaintiffs received more compensation than they would have received at 1.5 times the regular rate for their overtime hours.

29 U.S.C. § 207e(5) states that "extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee . . . or in excess of the employer's normal working hours or regular working hours" is excluded from calculating the "regular rate" at which an employee is entitled to compensated under the FLSA. Section h(2) then provides that "Extra compensation paid as described in [§ 207e(5)] shall be creditable toward overtime compensation payable pursuant to this section." *Id.* § 207h(2). Thus, the text of the FLSA appears to allow an employer to provide a premium rate of compensation above what an employee is usually paid to account for that employee working more than forty hours per week, which may then be credited towards any purported overtime compensation owed to that employee by virtue of them working more than forty hours per week. In other words, these carveouts permit employers like Defendants to increase wages to account for

---

[7] Defendants provide useful examples showcasing their arguments. With regard to Plaintiff Sama for instance, the original rate at which Plaintiff Sama was to be paid from September 14, 2020, to July 1, 2021, would have allegedly been $23.00 an hour. "Thus, instead of receiving the original $23.00 an hour for [his] work," Plaintiff Sama's hourly rate was raised to $28.28 for every hour worked. (ECF No. 35 at 2). "As an example, for the pay period ending September 30, 3020, [sic] Mr. Sama worked 141 hours and was paid, without adding his bonus money, $3,988.00, which is at the increased rate for all hours of $28.28 per hour. Had Mr. Sama been paid at the original rate, $23.00 an hour for the first 40 hours and then 1.5 times that rate, *i.e.*, $34.50 an hour, he would have received $1840 for his regular hours plus $2140 for the 61 overtime hours, for a total of $3944, or about $45.00 less." *Id.* at 2–3. As to Plaintiff Menkem, for example (according to Defendants), "for the pay period ending September 30, 3020, [sic] Mr. Menkem worked 126 hours and was paid, without adding his bonus money, $3,701.00, which is at the increased rate for all hours of $29.37 per hour. Had Mr. Menkem been paid at the original rate, $23.00 an hour for the first 40 hours and then 1.5 times that rate, *i.e.*, $34.50 an hour, he would have received $1840 for his regular hours plus $1,587 for the 46 overtime hours, for a total of $3,427, or about $274.00 less than what he actually received." (ECF No. 51 at 3) (emphasis in original). Notably, Plaintiffs do not contest that they were paid at these rates or in these aggregate amounts. Rather, Plaintiffs contest the existence and enforceability of the pay increase agreement itself.

overtime hours worked if those wages are above and beyond the rate which an employee is normally paid, and that increase in wages is creditable to the overall wages that an employee would be entitled to if they had been compensated at their normal hourly rate plus the 1.5 times rate for all overtime hours worked.  The Court therefore cannot conclude that Defendants violated the FLSA and MWHL as a matter of law.

Plaintiffs argue, however, that (1) the parties never did, in fact, enter into such an agreement, and (2) that any such agreement, even if entered into, is unenforceable because "employers and employees may not enter into agreements to pay and receive less pay than the FLSA provides for." (ECF Nos. 34-1 at 8–10, 50-1 at 7–8).  With regard to the first argument, Defendants maintain that they did, in fact, enter into the above compensation agreement with Plaintiffs.  Both parties support their positions through their respective deposition testimonies.  Such "he-said-they-said" situations premised on parties' competing deposition testimonies are precisely the types of genuine disputes of fact that Rule 56 forbids courts from deciding as a matter of law.  *See Harris v. Keystone Ins. Co.*, No. SAG-13-2839, 2015 WL 8606413, at *4 (D. Md. Dec. 14, 2015) ("Likewise, this Court has noted summary judgment is not appropriate when the deposition testimony of principal witnesses presents conflicting versions of the facts.") (quotation omitted); *Am. Computer Dev., Inc. v. McKinley-Ross Corp.*, No. CIV. ELH-14-00808, 2015 WL 1814622, at *2 (D. Md. Apr. 21, 2015) ("[I]n the face of conflicting evidence, such as competing affidavits or conflicting deposition testimony, summary judgment is generally not appropriate, because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility.").  With regard to the second argument, it is not clear to the Court as a matter of law that the purported agreement resulted in a compromise for Defendants to pay (and Plaintiffs to receive) less than the FLSA provides.  The above statutory provisions highlight as much, further

buttressed by the calculations set forth by Defendants indicating that Plaintiffs may have actually received more net compensation for their hours worked under the purported heightened hourly rate. Accordingly, genuine disputes of material fact exist as to whether Defendants failed to pay overtime wages in violation of the FLSA and MWHL and summary judgment is therefore denied on those issues.

Similar analysis applies to Plaintiffs' argument that Defendants failed to pay overtime wages in violation of the MWPCL as a matter of law. Plaintiffs' citations to the MWPCL indicate (1) that the term "wage" as used therein includes "overtime wages" and "any other remuneration promised for service" (Md. Code Ann. Lab. & Empl. § 3-501); (2) the frequency by which a covered employee must be paid (Md. Code Ann. Lab. & Empl. § 3-502), and (3) that the Court may award treble damages to an employee in "an amount not exceeding 3 times the wage, and reasonable counsel fees and other costs" should the Court conclude that Defendants violated the MWPCL and not as a result of a bona fide dispute (Md. Code Ann. Lab & Empl. § 3-507). *See* (ECF No. 34-1 at 10; ECF No. 50-1 at 8). Plaintiffs additionally emphasizes that § 3-502 prohibits "An agreement to work for less than the wage required under this subtitle." Md. Code Ann. Lab. & Empl. § 3-502(f). But similar to the above discussion, Plaintiffs provide no authority—and the Court finds none—for the proposition that the increased compensation agreement purportedly entered into by the parties constitutes a violation of the MWPCL as a matter of law, particularly considering that Defendants alleged that Plaintiffs may have received compensation *greater than* the required wage. The genuine dispute regarding whether that compensation agreement actually existed combined with the overlap in analysis courts have applied to simultaneously raised FLSA and MWPCL claims demonstrates that summary judgment regarding liability for violating the MWPCL is unwarranted. *See, e.g., Bocangel v. Warm Heart Fam. Assistance Living, Inc.*, No.

13

8:16-CV-03989-PX, 2020 WL 869222, at *4 n.4 (D. Md. Feb. 21, 2020) ("The standards governing the FLSA's scope . . . apply to the MWHL and the MWPCL. Thus, as is often the case, Plaintiffs' state law claims 'stand[] or fall[] on the[ir] . . . claim under the FLSA.'") (quoting *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012)).

3. <u>There Exists a Genuine Dispute of Material Fact Regarding Whether Defendants Acted Willfully.</u>

Actions for alleged violations of the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). "As such, the FLSA provides for two potential limitations periods, the application of which turns on whether the FLSA violations were conducted 'willfully.' Moreover, in addition to the limitations period, the issue of willfulness can impact the computation of unpaid overtime compensation under the FLSA." *Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011) (quotation omitted). The Supreme Court has clarified that establishing willfulness under the FLSA requires showing "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "Mere negligence on the part of the employer with regard to compliance with the FLSA is not sufficient to prove willfulness." *Gionfriddo*, 768 F. Supp. 2d at 890. Notably, the Supreme Court in *McLaughlin* expressly rejected that the willfulness standard may be met "based on nothing more than negligence, or, perhaps, on a completely good-faith but incorrect assumption that a pay plan complied with the FLSA in all respects." 486 U.S. at 135.

The parties again contest whether any alleged violations of the FLSA were willful based primarily on competing statements made during the parties' depositions. According to Plaintiffs, Defendants acted with—at the least—reckless disregard because Rev. Williams testified as to his

14

responsibilities (including payroll), his knowledge of the FLSA's time and a half provisions, Plaintiffs' work schedules, and that Defendants otherwise complied with the overtime regulations for all other units at Turning Point except for the dispensing unit. (ECF No. 34-1 at 11–12; ECF No. 50-1 at 9). But Defendants have also presented evidence that could plausibly lead to a conclusion that their conduct was the product of a flawed interpretation of the FLSA, taking into account the perceived needs of employees in the dispensing unit specifically.[8] This Court is consistently hesitant to rule on the "willfulness" issue at the summary judgment stage when presented with competing plausible justifications for an employer's conduct. *See Gionfriddo*, 769 F. Supp. 2d at 890–91; *Robinson v. Empire Equity Grp., Inc.*, No. CIV. WDQ-09-1603, 2014 WL 6698407, at *5 (D. Md. Nov. 24, 2014) (noting that the issue of willfulness under the FLSA "is ultimately a question of fact") (quotation omitted); *Gaske v. Crabcake Factory Seafood House, LLC*, No. CV 18-2630-JMC, 2021 WL 5326465, at *8 (D. Md. Nov. 15, 2021) (noting that "the Court is reluctant to address" the issue of "willfulness for statute of limitations purposes" under

---

[8] Specifically, Rev. Williams testified that the purported agreement's intent was to address the "40 hours a week with me and the 20 or so extra hours that they work working their parttime jobs, that dispense with the travel time, dispense with our hiring parttime nurses, that if they would like, they could just work for me, I would give them a four to five dollar an hour raise, somewhere in that range, I just don't remember specifically today, that would cover the additional hours, cover the overtime, and save my nurses from going from one job to another job, and there would be this continuity . . . ." (ECF No. 34-4 at 15).

the FLSA "as a matter of law"). Accordingly, Plaintiffs' request for summary judgment that Defendants are subject to the FLSA's three-year statute of limitations is denied.[9]

### 4. There Exists a Genuine Dispute of Material Fact Regarding Whether Plaintiffs Are Entitled to Liquidated or Treble Damages.

Plaintiffs finally argue that they are entitled to liquidated damages under the FLSA and MWHL and treble damages under the MWPCL. (ECF No. 34-1 at 13–15; ECF No. 50-1 at 10–11). "The FLSA provides that the employer who violates its minimum wage or overtime provisions 'shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.'" *Gaske*, 2021 WL 5326465 at *7 (quoting 29 U.S.C. § 216). The MWHL allows for the same recovery. *See* Md. Code Ann., Lab. & Empl. § 3-427(a). As Plaintiffs point out, a court may refuse to award or reduce the amount of liquidated damages under either statute "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; Md. Code Ann., Lab. & Empl. § 3-427(d)(2). Related, "The MWPCL provides that 'if a court finds that an employer withheld the wage of an employee in violation of this subtitle and not as a result of a bona fide dispute, the

---

[9] Plaintiffs additionally contend that any argument by Defendants regarding the statute of limitations is waived because Defendants did not plead the statute of limitations as an affirmative defense pursuant to Federal Rule of Civil Procedure 8(c). (ECF No. 49-2 at 3; ECF No. 56-2 at 3). Plaintiffs are correct that Defendants did not assert the statute of limitations as an affirmative defense in their Answers. "[A] party's failure to raise an affirmative defense in the appropriate pleading generally results in a waiver. However, a waiver of an affirmative defense is not automatic; it requires the opposing party to show prejudice or unfair surprise." *Jennings v. Frostburg State Univ.*, No. CV ELH-21-656, 2023 WL 4567976, at *11 (D. Md. June 27, 2023). Plaintiffs have not shown prejudice or unfair surprise beyond arguing the language of Rule 8(c) itself, and the Court therefore declines to hold that Defendants waived their statute of limitations argument. *See also Snyder v. United States*, No. 88-CV-2136 (RR), 1995 WL 724529, at *11 (E.D.N.Y. July 26, 1995) (collecting cases from various U.S. District Courts and Circuit Courts of Appeal where affirmative defenses were not deemed waived where the defense was first raised at summary judgment and the defendants' failure to plead the affirmative defenses caused no prejudice). Moreover, as Defendants point out, "The burden is on the *employee* to prove willfulness" under the FLSA rather than the burden being on Defendants to prove non-willfulness through an affirmative defense. *Carrera v. EMD Sales, Inc.*, 402 F. Supp. 3d 128, 151 (D. Md. 2019) (emphasis added).

court may award the employee an amount not exceeding 3 times the wage.'" *Roley v. Nat'l Pro. Exch., Inc.*, 474 F. Supp. 3d 708, 725 (D. Md. 2020), *aff'd*, 860 F. App'x 264 (4th Cir. 2021) (quoting Md. Code Ann., Lab. & Empl. § 3-507.2(b)).

As a preliminary matter, awarding liquidated damages under the FLSA or MWHL and/or awarding treble damages under the MWPCL is premature at this time because, for the reasons explained above, Plaintiffs are not entitled to summary judgment that Defendants did, as a matter of law, violate those statutes. Nonetheless, the competing justifications and rationales underlying Defendants' conduct makes deciding these issues improper as a matter of law, even assuming the Court were to rule in favor of Plaintiffs regarding liability. *See Gaske*, 2021 WL 5326465 at *8 ("The inquiry regarding willfulness for statute of limitations purposes is not precisely the same as the 'reasonable good faith' standard applicable to liquidated damages. Nonetheless, consistent with how similar issues are treated under the MWPCL . . . as with any issue of intent or motivations, the Court is reluctant to address either as a matter of law."); *see also Medex v. McCade*, 372 Md. 28, 43–44 (2002) ("[W]hether punitive or compensatory in nature, the determination of discretionary damages is quintessentially a matter for the trier of fact, and therefore, the determination of a bona fide dispute and award of treble damages was for the jury.") (quotation omitted); *Roley*, 474 F. Supp. 3d at 725 ("The assessment whether a bona fide dispute exists centers on whether the party resisting the claim has a good faith basis for doing so, whether there is a legitimate dispute over the validity of the claim or the amount that is owing. The existence of a bona fide dispute is generally a fact-based inquiry best left for resolution by the jury.") (quotation omitted). The Court therefore denies Plaintiffs' requests for judgment as a matter of law regarding their entitlement to liquidated damages under the FLSA and MWHL and/or treble damages under the MWPCL.

## IV. CONCLUSION

For the foregoing reasons, it is this 10th day of January, 2024, hereby ORDERED that Plaintiffs' Motions to Strike (ECF Nos. 49, 53) are DENIED; and Plaintiffs' Motions for Summary Judgment (ECF Nos. 34, 50) are GRANTED in part and DENIED in part.  The Motions for Summary Judgment are granted to the extent that

1. there is no genuine dispute of material fact that both Defendants are "employers" within the scope of the FLSA, MWHL, and MWPCL; and

2. there is no genuine dispute of material fact that both Plaintiffs are "employees" thereunder.

However, the Motions for Summary Judgment are denied to the extent that

1. there exists a genuine dispute of material fact regarding whether Defendants violated the FLSA, MWHL, and MWPCL;

2. there exists a genuine dispute of material fact regarding whether Defendants' violations of the FLSA, if proven, were willful thus allowing for a three-year statute of limitations; and

3. there exists a genuine dispute of material fact regarding whether Plaintiffs are entitled to liquidated damages under the FLSA and MWHL and/or treble damages under the MWPCL, assuming *arguendo* that Defendants violated the FLSA, MWHL, and/or MWPCL.


Date: January 10, 2024                         /s/
                                    J. Mark Coulson
                                    United States Magistrate Judge